**Mary Ann TAVERY, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 91–1376.

United States Court of Appeals, Tenth Circuit.

July 20, 1994.

---

Mary Ann Tavery, pro se.

James R. Walker of Rothgerber, Appel, Powers & Johnson, Denver, CO, amicus curiae, for plaintiff-appellant Mary Ann Tavery.*

Kevin M. Brown, Trial Atty., Tax Div., Dept. of Justice, Washington, DC (Shirley D. Peterson, Asst. Atty. Gen., James A. Bruton, Acting Asst. Atty. Gen., and Gary R. Allen, Jonathan S. Cohen, and Janet Kay Jones, Attys., Tax Div., Dept. of Justice, Washington, DC, and Michael J. Norton, U.S. Atty.,

Denver, CO, on the brief), for defendant-appellee.

Before HOLLOWAY, McKAY, and GARTH,** Circuit Judges.

HOLLOWAY, Circuit Judge.

Plaintiff-appellant Mary A. Tavery appeals a summary judgment in favor of defendant-appellee the United States. The district court dismissed Ms. Tavery's complaint alleging unlawful disclosures of tax return information by a government attorney in violation of 26 U.S.C. § 6103. We affirm.

**I**

In her complaint against the United States, Ms. Tavery alleges that "[o]n or about April 13, 1989, United States Attorney John D. Steffan filed a brief in the case of *The United States of America v. Colorado Reform Baptist Church, Inc.,* Civil Action No. 88–X–259[,] . . . in which he violated [26] USC [§] 7431 by disclosing return information regarding plaintiff's Tax Returns without plaintiff's permission." I R. Doc. 1 at ¶ 4. Rev. William Conklin, the husband of Ms. Tavery, was the records custodian of the church.[1] Ms. Tavery alleges that Mr. Steffan made the following statement in his brief:

> [T]he Internal Revenue Service refunded $964.67, $2,045.63, and $651.39, all on March 8, 1989, in federal taxes and accruals to the Conklins. In addition, upon information and belief, Mrs. Conklin/Tavery is an engineer earning in excess of $40,000 a year.[2]

*Id.* at ¶ 5. Ms. Tavery further avers that the disclosure, quoted above, was "willful",

---

* This court appointed Mr. Walker to submit a supplemental brief, Amicus Curiae. Ms. Tavery requested that argument time allotted to her be given to Mr. Walker, and he argued the cause for her.

** The Honorable Leonard I. Garth, Senior Circuit Judge for the Third Circuit, sitting by designation.

1. Action No. 88–X–259 of the District of Colorado was a proceeding commenced by a government "Petition to Enforce Internal Revenue Service Summons." The summons was issued by an IRS Revenue Agent who was conducting an examination of the Colorado Reform Baptist

Church for the purpose of determining its entitlement to federal tax exempt status and its potential liability for federal taxes. The petition to enforce the summons alleged that the Agent had issued the IRS administrative summons of February 2, 1988; it was served that day; it called for an appearance with materials on February 29; and no authorized representative appeared in response to the summons nor were any of the requested records turned over pursuant to the summons. Petition at ¶¶ 5, 7 and 9.

2. Although married to each other, Ms. Tavery and Mr. Conklin had filed separate returns for the relevant tax year. Appellant's Opening Brief at 5; Brief for the Appellee at 23.

"knowing[ ]" or "negligen[t]" and therefore "in violation of 26 U.S.C. [§] 6103(c)-(h)." *Id.* at ¶ 6.

Shortly after the filing of the instant complaint, Ms. Tavery filed a motion for summary judgment, claiming she was entitled to judgment on the basis of the government's allegedly unauthorized disclosure. I R. Docs. 5, 6. The government filed a brief opposing summary judgment for Ms. Tavery and supporting a cross-motion for summary judgment by the government. The government argued, *inter alia*, that Mr. Steffan's disclosure of tax information was authorized by 26 U.S.C. § 6103(h)(4)(B) or (C), which provide:

A return or return information may be disclosed in a Federal or state judicial or administrative proceeding pertaining to tax administration, but only—

\* \* \* \* \* \*

(B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding; or

(C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding ...

I R. Doc. 9 at 8–11.

In an affidavit submitted in support of the government's response and cross-motion, Mr. Steffan stated that the information regarding Ms. Tavery's income was disclosed in Case No. 88–X–259 in the District of Colorado in connection with the right of Ms. Tavery's husband, Rev. William Conklin, to court-appointed counsel in subsequent potential contempt proceedings. I R. Doc. 8, Steffan Aff. at ¶¶ 5–10.[3] The information in question concerning Ms. Tavery was used by the government to support its argument that "Mr. Conklin could not establish his inability to pay his own attorney's fees, and thus was not entitled to appointed counsel." *Id.* at ¶ 10. The affidavit stated that Mr. Steffan never worked on any case in the Department of Justice in which Ms. Tavery was a party and that accordingly he "was not given access by the Internal Revenue Service to any 'tax return information' of Ms. Tavery." *Id.* at ¶ 3. The affidavit also expressed Mr. Steffan's belief that "the Internal Revenue Service was [not] the source of the information regarding Ms. Tavery's income, occupation or tax refunds." *Id.* at ¶ 12. Accordingly, the government argued that Ms. Tavery's summary judgment motion should be denied because "[a] genuine issue of material fact remains: where did Mr. Steffan get the information which he used in the brief filed with the Court?" I R. Doc. 9 at 7–8.

 In her brief filed in response to the government's cross-motion, Ms. Tavery argued that Mr. Steffan's claimed ignorance as to the source of the disclosed tax information proved actionable negligence in the admitted disclosure. I R. Doc. 10 at 1–2.[4] Ms. Tavery's response did not directly discuss the

---

3. In the underlying tax proceeding, No. 88–X–259, the respondent, Colorado Reform Baptist Church, Inc., had been served with the summons as mentioned above. Rev. Conklin, in his capacity as custodian of records for the church, had refused to comply, asserting that producing the records would violate his constitutional rights. I R. Doc. 8, Steffan Aff. at ¶ 7. As a result, the district court sought to ascertain Rev. Conklin's entitlement to appointed counsel in connection with a potential contempt citation in such proceedings.

4. The concurring opinion takes the position that the statement in Mr. Steffan's affidavit that he "was not given access by the Internal Revenue Service to any tax 'return information' of Ms. Tavery" (I R., Doc. 8 at ¶ 3) was alone sufficient to compel summary judgment for the government in light of Ms. Tavery's failure to introduce contrary evidence. We disagree. Mr. Steffan's

statement, even if uncontradicted, does not establish that the tax information disclosed by Mr. Steffan was not "return information" within the meaning of § 6103. It is true, as the concurring opinion notes, that in *Stokwitz v. United States*, 831 F.2d 893, 897 (9th Cir.1987), *cert. denied*, 485 U.S. 1033, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988), the Ninth Circuit affirmed judgment for the government under § 6103 on the grounds that "section 6103 applies only to information filed with and disclosed by the IRS, and Stokwitz' tax returns were not obtained directly or indirectly from the IRS." Nevertheless, it is clear that a United States officer or employee may violate the statute by disclosing return information, previously released by the IRS, even if the information was not received from the IRS directly. Section 6103(a) ("[N]o officer or employee of the United States, ... shall disclose any return or return information *obtained by him in any manner* [.]") (emphasis added); *Stokwitz*, 831

government's assertion that its disclosure was authorized under § 6103(h)(4)(B) and (C). *Id.* at 1–3. In a declaration previously filed in support of her own motion, however, Ms. Tavery had pertinently stated her position "that [her] income is not related to the resolution of any issue in the case 88–X–259." I R. Doc. 5, Declaration in Support of Plaintiff's Memorandum of Law.

■ The district court denied Ms. Tavery's motion for summary judgment and granted the government's cross-motion. I R. Doc. 14. The court concluded that Ms. Tav-

ery's income necessarily "had a substantial bearing on Reverend Conklin's ability to pay an attorney" and that the government's disclosure therefore "f[e]ll under either [subsection] (C) or (B) [of § 6103(h)(4) ], and accordingly was not inappropriate." *Id.* at 2.[5] The complaint and action were dismissed. Ms. Tavery timely appealed the court's judgment. I R. Doc. 6.

## II

While the ruling of the district judge was based on his conclusion that the govern-

---

F.2d at 896 n. 4 ("Section 6103 applies to all who receive information from the IRS, *directly or indirectly*.") (emphasis added). Thus, Mr. Steffan's statement in paragraph 3 of his affidavit cannot support summary judgment for the government.

We note a further statement in paragraph 12 of Mr. Steffan's affidavit to the effect that "I do not believe that the Internal Revenue Service was the source of the information regarding Ms. Tavery's income, occupation or tax refunds." While this statement does deal with the proscription of § 6103(a) against release of return information by the IRS, it is a mere statement of belief and therefore is insufficient to support summary judgment on the source of disclosure issue. Under Fed.R.Civ.P. 56(e), only statements "made on personal knowledge" will support a motion for summary judgment; statements of mere belief must be disregarded. *Automatic Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. 827, 831, 70 S.Ct. 894, 896, 94 L.Ed. 1312 (1950) (affidavit in support of motion for summary judgment made on information and belief does not comport with Rule 56(e)); *see also Jameson v. Jameson*, 176 F.2d 58, 60 (D.C.Cir.1949) ("Belief, no matter how sincere, is not equivalent to knowledge."); *Carey v. Beans*, 500 F.Supp. 580, 583 (E.D.Pa. 1980) (on summary judgment, "statements [in an affidavit] prefaced by the phrases 'I believe' or 'upon information and belief' or those made upon an 'understanding' . . . are properly subject to a motion to strike."); 10A Wright, Miller and Kane, *Federal Practice and Procedure: Civil 2d* § 2738, pp. 486–89 (1983).

5. We feel it would be unfair to affirm the summary judgment against Ms. Tavery, as the concurring opinion suggests, on the different theory that she did not produce evidence that the IRS was the source of her return information. That argument was not made below. "The United States' Brief in Opposition to Plaintiff's Motion for Summary Judgment, and in Support of Its Cross–Motion for Summary Judgment," I R. Doc. 9, in Proposition III did argue that Ms. Tavery had not shown that the information in question necessarily flowed through the IRS. *Id.* at 6. But from this, the government concluded only that Ms. Tavery herself was not entitled to

summary judgment. The government's position on this point was that: "A genuine issue of material fact remains: where did Mr. Steffan get the information which he used in the brief filed with the Court?" *Id.* at 7–8. Then the government brief turned to the grounds on which it said the *government* was entitled to summary judgment itself. In Proposition IV, the brief argued that "[b]ecause all the elements of section 6103(h)(4)(B) and (C) have been satisfied in this case, the United States is entitled to summary judgment in its favor." I R. Doc. 9 at 11. Proposition V concluded the brief, arguing that the government's cross-motion for summary judgment should be granted on the good faith exception in § 7431(b). *Id.* at 11–12. Likewise the government's brief on appeal, while relying on Mr. Steffan's affidavit for other purposes, makes no argument that because Ms. Tavery failed to prove the information came from the IRS, that should be the basis for summary judgment for the government. In fact, the government's brief on appeal concludes, as below: "Thus, a fact question remains whether the information at issue falls within the statutory definition of 'return information.' " Brief for the Appellee at 27 n. 8.

We cannot agree to affirm the summary judgment on the basis that Ms. Tavery failed to produce evidence that the IRS was the source of her return information. Ms. Tavery was not alerted by the government below that such evidence had to be shown in order for her to avoid summary judgment. Accordingly, for us to rely on the absence of such evidence would, in effect, amount to entry of summary judgment *sua sponte*. This can only be done where "the losing party was on notice that she *had to come forward* with all of her evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (emphasis added). *Accord Buckingham v. United States*, 998 F.2d 735, 740 (9th Cir.1993) ("[A] litigant must be given reasonable notice that the sufficiency of his or her claim will be in issue[.]"); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989) ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B—a ground the movant might have presented but did not.").

ment's disclosure came within either § 6103(h)(4)(B) or (C), we conclude that the first exception, subsection (B), amply supports the summary judgment for the government. We are convinced that the challenged disclosure was covered by this exemption which applies "if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding." § 6103(h)(4)(B). Therefore we do not reach the additional issue whether the information "directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding." § 6103(h)(4)(C).[6]

## A

The government argues that in the underlying Case No. 88–X–259 in the District of Colorado, the issue of Rev. Conklin's qualifying as an indigent for appointment of counsel under the Criminal Justice Act was an "issue in the proceeding" within the meaning of §§ 6103(h)(4)(B) and (C). As Mr. Steffan's affidavit shows, the district court ordered Rev. Conklin to comply with the court's previous order and the Internal Revenue Service summons to produce records. I R. Doc. 8, ¶ 8. The order also directed, in part, that

> to the extent that Rev. William Conklin seeks appointment of counsel to represent his interests, if any, in subsequent proceedings for Contempt of Court, Rev. Conklin is DIRECTED to appear before a Pretrial Services Officer ... and to provide, under oath, full and complete disclosure of his assets, income and liabilities, on or before April 14, 1989; it is further
>
> ORDERED that financial an[d] other information submitted in connection with

Rev. Conklin's application for appointed counsel shall be filed under seal and remain under seal until further order of the court; it is further

> ORDERED that the United States shall address the issue of Rev. Conklin's right to appointed counsel in a brief to be filed on or before April 14, 1989....

I R. Doc. 9, Govt.Ex. A at 3–4 (emphasis added).

It was in that brief, ordered by the court to be filed, that government counsel made the disclosure concerning Ms. Tavery's approximate income and the tax refunds to the Conklins. The affidavit of Mr. Steffan concluded that he made the disclosure in good faith, honestly believing that the statement about Ms. Tavery was authorized by § 6103(h)(4)(B). The government thus argues that even assuming the material disclosed was "return information," which it does not concede, the disclosure was prompted by the district court's order that the government address Rev. Conklin's eligibility for court-appointed counsel in a potential civil contempt proceeding. Brief for the Appellee at 17–18.

 We are persuaded by the government's argument that in these circumstances the disclosure came within § 6103(h)(4)(B). In the underlying case, Rev. Conklin's eligibility as an indigent for appointment of counsel was made an "issue in the proceeding" by the district judge's order for the government brief to address the issue. Because of a possible contempt proceeding in which Rev. Conklin could face loss of liberty, the court wanted to have information to determine Rev. Conklin's possible eligibility for appointment of counsel, *i.e.* whether he was finan-

---

**6.** Ms. Tavery concentrates the arguments in her pro se appellate briefs on § 6103(h)(4)(C). However, she also makes generalized contentions such as that since "Rev. Conklin was not a party to the proceeding, the *exceptions* relied on by the lower Court cannot apply...." Brief of Appellant at 7 (emphasis added). As noted, the district judge relied on both exceptions in his ruling.

Ms. Tavery also says that the "United States Attorney violated the wrongful disclosure statute as alleged in the original complaint," *id.* at 7, where she alleged that her "income is not directly related to the resolution of any issue in the

proceeding." Complaint, ¶ 9, I R. Doc. 1 at 2. This position was similar to the one she took below in support of her motion for summary judgment. As noted, she there stated "that [her] income is not related to the resolution of any issue in the case 88–X–259." I R. Doc. 5. On this record we will not construe Ms. Tavery's pro se briefs as conceding that the exception in § 6103(h)(4)(B) applies to excuse the government's disclosures because of her focusing her appellate arguments on the other exception in § 6103(h)(4)(C).

cially unable to obtain adequate representation, 18 U.S.C. § 3006A(a). *See Walker v. McLain,* 768 F.2d 1181, 1183 (10th Cir.1985), *cert. denied,* 474 U.S. 1061, 106 S.Ct. 805, 88 L.Ed.2d 781 (1986).

■ The scope of the relevant inquiry on the financial inability issue is broad. *See United States v. Barcelon,* 833 F.2d 894, 897 & n. 5 (10th Cir.1987) (detailing numerous factors to be considered, including "the availability of income to the defendant from other sources such as a spouse...."). The factors to consider include money sent to the applicant by his mother, *Souder v. McGuire,* 516 F.2d 820, 821 (3d Cir.1975), and transfers in trust. *United States v. Schmitz,* 525 F.2d 793, 794 (9th Cir.1975) (opinion of Chambers, Chief Judge). "Financial inability includes an inquiry into whether there is available to the defendant funds for his defense from other sources such as family, friends, trusts, estates, or defense funds." *United States v. Martinez–Torres,* 556 F.Supp. 1275, 1279 (S.D.N.Y.1983). Under this broad test, we hold that the district court correctly decided that Ms. Tavery's income and tax refunds were relevant to the issue of Rev. Conklin's eligibility for appointment of counsel, and that the government's disclosure of this information was therefore permissible under § 6103(h)(4)(B). *See Lebaron v. United States,* 794 F.Supp. 947, 951 (C.D.Cal.1992) (§ 6103(h)(4)(B) permitted disclosure of a party's tax information "because it directly related to the discovery issue before the Magistrate Judge.").

**B**

We briefly address the argument by Special Counsel that "[i]n order to fall within th[e] § 6103(h)(4) exception, the third party's tax return information must have a 'direct relationship' to the resolution of the taxpayer's *tax* liability[,]" a relationship that was clearly lacking in the potential contempt proceedings at issue here. Brief of Special Counsel at 7 (emphasis in original). In support, Special Counsel relies on and quotes the following portion of the legislative history of § 6103(h)(4):

> The disclosure of a third party return in a tax proceeding (including the United States Tax Court) will be subject to the same item and transaction tests described above, except that such items and transactions must have a *direct relationship to the resolution of an issue of the taxpayer's liability.*
>
> Only such part or parts of the third party's return or return information which reflects the item or transaction will be subject to disclosure both before and in a tax proceeding. Thus, the return of a third-party witness could not be introduced in a tax proceeding for the purposes of discrediting that witness except on the item and transaction grounds stated above.

Brief of Special Counsel at 7 (quoting S.Rep. No. 938, 94th Cong., 2d Sess. 326 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 3439, 3755) (emphasis in brief).

■ While the foregoing legislative history may provide some support for Special Counsel's argument, the plain language of § 6103 itself does not. Instead, with respect to IRS disclosures of return information in judicial or administrative proceedings "pertaining to tax administration", § 6103(h)(4)(B) provides that such information may be disclosed when the treatment of an item reflected therein "may be related to *an issue* in the proceeding[.]" (Emphasis added.) [7] Nowhere does

---

7. Section 6103(b)(4) defines "tax administration" in part as

(i) the administration, management, conduct, direction, and supervision of the execution and application of the internal revenue laws or related statutes (or equivalent laws and statutes of a State) and tax conventions to which the United States is a party,....

Consistent with the foregoing provision, we have held that "[t]he term 'tax administration' is to be interpreted broadly." *First Western Government Securities, Inc. v. United States,* 796 F.2d 356, 360 (10th Cir.1986) (holding that "tax ad-

ministration" for purposes of § 6103(h)(4)(C) includes IRS audit). *See also Rueckert v. IRS,* 775 F.2d 208, 210–12 (7th Cir.1985) ("tax administration" includes investigation of state revenue agents' potential conflicts of interest); *United States v. Mangan,* 575 F.2d 32, 40 (2d Cir.) ("tax administration" includes criminal prosecution for mail fraud, *inter alia,* not involving determination of defendant's tax liability), *cert. denied,* 439 U.S. 931, 99 S.Ct. 320, 58 L.Ed.2d 324 (1978); *Davidson v. Brady,* 559 F.Supp. 456, 461 (W.D.Mich.1983) ("tax administration" includes criminal sentencing hearing not involving deter-

the statute limit disclosure to instances where taxpayer liability is in issue and the disclosed information relates thereto. To the extent tension may exist between the broad but plain language of the statute and its legislative history, we follow Judge Friendly's application of " 'the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute.' " *Mangan,* 575 F.2d at 40 (rejecting claim that disclosure under § 6103 is limited to cases involving a determination of taxpayer liability, and quoting *Greenwood v. United States,* 350 U.S. 366, 374, 76 S.Ct. 410, 415, 100 L.Ed. 412 (1956)). *See also Rueckert,* 775 F.2d at 210–12; *Davidson,* 559 F.Supp. at 461.

We thus conclude that Ms. Tavery's return information was properly disclosed pursuant to § 6103(h)(4)(B) because of its demonstrated relationship to the underlying tax administration proceeding as indicated by the district judge's order requiring the government to brief the issue of Rev. Conklin's eligibility for appointment of counsel. The relevance of the return information to the underlying proceeding brings the government's disclosure of the information within the parameters of § 6103(h)(4)(B).

### III

■ The exceptions in § 6103 are stated in the disjunctive. *See United States v. Hashimoto,* 878. F.2d 1126, 1129 n. 5 (9th Cir.1989). Since we are convinced that the exception in § 6103(h)(4)(B) applies here, we need go no further.

**AFFIRMED.**

GARTH, Circuit Judge, concurring:

The majority has concluded that it should affirm the district court's summary judgment

in favor of the Government. I totally agree with that result. However, I would reach that conclusion without ever addressing or relying upon the disclosure exceptions of 26 U.S.C. § 6103(h)(4). Rather, I am persuaded that, as a threshold matter and pursuant to summary judgment principles, the record cannot support Ms. Tavery's allegation that Mr. Steffan, the Government attorney, disclosed "return information" within the intendment of 26 U.S.C. § 6103. This being so, Ms. Tavery cannot prevail.

### I.

Ms. Tavery alleged in her complaint that Mr. Steffan, the United States attorney identified in her submissions, disclosed "return information regarding [Ms. Tavery's] Tax Returns without [her] permission," and that such disclosure was made in violation of § 6103. I R Doc. 1 at ¶¶ 4, 6. The plain language of § 6103(b)(2) indicates that the statutory provision, which accords confidentiality to "return information," is intended to act as a general prohibition only against public disclosure of tax information filed by the taxpayer with the IRS and disclosed by the IRS. 26 U.S.C. § 6103(b)(2) (defining "return information" to include element that it be "received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return * * *."); *see Stokwitz v. United States,* 831 F.2d 893, 897 (9th Cir.) (holding that "section 6103 applies only to information filed with and disclosed by the IRS"), *cert. denied,* 485 U.S. 1033, 108 S.Ct. 1592, 99 L.Ed.2d 907 (1988); *see also First Western Gov't Secs. v. United States,* 796 F.2d 356, 358 (10th Cir.1986) ("Return information requires some nexus between the

mination of tax liability), *aff'd,* 732 F.2d 552 (6th Cir.1984); *see also Black's Law Dictionary* 1204 (6th ed. 1990) (defining "proceeding" as including "all possible steps in an action from its commencement to the execution of judgment"). *But see Mallas v. United States,* 993 F.2d 1111, 1121–23 (4th Cir.1993) (criticizing *First Western* and interpreting "administrative proceeding" to exclude tax investigations and audits for purposes of applying § 6103(h)(4)(C)); *McLarty v. United States,* 741 F.Supp. 751, 754–55 (D.Minn. 1990) (interpreting "tax administration" to ex-

clude *pro hac vice* hearing involving attorney application to represent defendant in criminal tax case, thus viewing hearing as separate from underlying tax matter for purposes of applying § 6103(h)(2) and (4)), *summ. judgment granted, on recons.,* 784 F.Supp. 1401 (D.Minn.1991).

For purposes of this case, we believe the term "tax proceeding", as defined in the statute, is broad enough to encompass a potential contempt proceeding against Rev. Conklin in connection with the enforcement proceeding concerning the tax exempt status of Rev. Conklin's church.

data or information obtained and the furtherance of obligations controlled by Title 26.").

### A.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *accord Clemmons v. Bohannon*, 956 F.2d 1523, 1525 (10th Cir.1992) (en banc). Statements of fact in support of, or in opposition, to a motion for summary judgment must be made under oath, and must be admissible in evidence. Fed. R.Civ.P. 56(e).[1] The failure of a party resisting a summary judgment motion to contradict, specifically and affirmatively, the sworn fact statements of the moving party will result in judgment for the moving party. *Id.*

### B.

In support of *her* motion for summary judgment, Ms. Tavery made only the following declaration:

1. I am Mary Ann Tavery, the plaintiff in the above-entitled action.

2. I did not give the United States Attorney the permission to disclose my return information in [Mr. Steffan's brief] which is attached to the complaint.

3. It is my opinion that my income is not related to the resolution of any issue in the case 88–X–259.

4. I was not a party to the litigation in case 88–X–259.

5. I filed married-filing separately for the years 1986 to present.

I R. Doc. 6.

In opposition to Ms. Tavery's motion for summary judgment and in support of *its* cross motion, the Government submitted the affidavit of Mr. Steffan. In that affidavit, Mr. Steffan, under oath, averred that he "was not given access by the Internal Revenue Service to any tax 'return information' of Ms. Tavery." I R. Doc. 8 at ¶ 3. The affidavit submitted by the Government denying that Mr. Steffan obtained the disclosed information from the IRS created a genuine issue of material fact, thereby precluding summary judgment in favor of Ms. Tavery. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990) ("where the facts specifically averred by the [party opposing summary judgment] contradict facts specifically averred by the movant, the motion must be denied.").

In order to resist the Government's cross motion for summary judgment, Ms. Tavery then had to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there [was] a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(e)); *accord Clemmons*, 956 F.2d at 1525. Her sworn averment in response to the Government's properly-supported cross motion had to contain more than "mere allegations or denials." Fed.R.Civ.P. 56(e). That is because the object of Rule 56(e) "is not to replace conclusory allegations of the complaint with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888, 110 S.Ct. at 3188. "Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential

---

1. Fed.R.Civ.P. 56(e) requires that:

 Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Id.* at 888–89, 110 S.Ct. at 3188–89.

### C.

Ms. Tavery failed to present any countervailing evidence that would have created a dispute of material fact over the source of the information disclosed by Mr. Steffan. Her only offering on this point was a facetious, "Maybe a little bird told him."[2] Ms. Tavery could not survive summary judgment in favor of the Government because she did nothing more than raise " 'some metaphysical doubt as to the material facts.' " *Clemmons,* 956 F.2d at 1525 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Although Mr. Steffan's affidavit shed no light on the actual source of the disclosed information, the Government, in order to succeed on its cross motion for summary judgment, did not have to *disprove* Ms. Tavery's allegations; it was sufficient that Mr. Steffan in his sworn affidavit affirmatively and specifically denied that he had been given access by the IRS to Ms. Tavery's "return information." *See Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir.1986) ("The moving party's burden cannot be enhanced to require his proof of a negative; that is, not only is there no evidence in the record, but plaintiff's evidence need not be disproved."), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

Summary judgment for the Government was appropriate because Ms. Tavery did not establish by affidavit or any other affirmative sworn evidence that the source of the information disclosed by Mr. Steffan was the IRS. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514 ("plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery."); *see also Thornton v. United States,* 493 F.2d 164, 167 (3d Cir.1974) (holding that unsworn statements in a brief do not constitute evidence).

Because the information disclosed by Mr. Steffan was never shown to be "return information," (a burden which Ms. Tavery failed to carry) the district court never had to reach the question of whether the exceptions of § 6103(h)(4) shielded the Government from liability for disclosure of that information. *See Stokwitz,* 831 F.2d at 896 ("Nothing in [§ 6103] or its legislative history suggests an intention to protect a taxpayer's financial data from any potential risk of disclosure

---

2. Ms. Tavery replied to the Government's motion for summary judgment in an unsworn reply as follows:

The government argues that the unlawful disclosure is not an unlawful disclosure under 26 USC 7431 and 26 USC 6103 because the United States Attorney claims that he did not get the $40,000 amount of income from the IRS but from somewhere else. Maybe a little bird told him. The fact is, the United States Attorney at the very least doesn't know where he gleaned the information which shows he acted in a negligent fashion and his negligence would lead to an assessment against the government for damages under 26 USC 7431. In the Tenth Circuit the only thing the plaintiff has to show is simple negligence. See *Chandler v. [United States,* 687 F.Supp. 1515 (D.Utah 1988)]. The United States Attorney claims he knew how much money Mary Ann Tavery made in a year but didn't know she filed married filing separately. The fact that he knew the amount of money Mary Ann Tav-

ery made from some undetermined source but didn't know that Mary Ann Tavery filed separate returns clearly shows simply negligence under *Chandler, supra.*

There is only issue for the Court to decide. Can the United States Attorney make a specific unlawful disclosure and escape from a charge of simple negligence by claiming he didn't get the information from the IRS when he clearly can state no other source for his information?

Assuming arguendo that the United States attorney did not get this information from the IRS; then where did he get it? If he got it from some individual who he was not able to identify in his affidavit; he still made an unlawful disclosure because that individual whether or not he worked for the IRS would not have legal authority to publish Tavery's return information. Two wrongs do not make a right?

\* \* \* \* \* \*

I R. Doc. 10 at 1–2.

except that arising from the filing of the taxpayer's return with the IRS."); *see also United States v. Bacheler*, 611 F.2d 443, 446 (3d Cir.1979) (discussing legislative history). The district court nevertheless did reach that issue; but, as I have pointed out, did so unnecessarily and gratuitously.

## II.

In its October 15, 1991 order denying Ms. Tavery's motion for summary judgment and granting the cross motion of the Government, the district court never found that the information disclosed by Mr. Steffan had emanated from the IRS. The district court merely *assumed* that the allegation raised in Ms. Tavery's complaint was correct, and that the information disclosed by Mr. Steffan was, in fact, "return information." Those assumptions fueled the need for the district court to discuss the exceptions to disclosure found in 26 U.S.C. § 6103(h)(4). However, in making those assumptions, the district court completely disregarded the Supreme Court's instructions that:

> It will not do to "presume" the missing facts because without them the affidavits would not establish the injury that they generally allege. That converts the operation of Rule 56 to a circular promenade: plaintiff's complaint makes general allegation of injury; defendant contests through Rule 56 existence of specific facts to support injury; plaintiff responds with affidavit containing general allegation of injury, which must be deemed to constitute averment of requisite specific facts since otherwise allegation of injury would be unsupported (which is precisely what defendant claims it is).

*Lujan*, 497 U.S. at 889, 110 S.Ct. at 3189.

In reviewing the district court's order of summary judgment, we, of course, view the case in the same manner as the district court. *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir.1988). Hence, we examine the affidavits and all other materials which were before the district court so as "to determine whether any genuine issue of material fact pertinent to the ruling remains, and if not, whether the substantive law was correctly applied." *Id.* (citing Fed.R.Civ.P. 56).

In responding to the Government's cross motion for summary judgment, Ms. Tavery relied solely on the unsupported and conclusory allegations contained in her pleadings. She offered no documentary or testimonial evidence based on personal knowledge, containing facts which would be admissible at trial, to substantiate her claim that the information disclosed was "return information" within the meaning of § 6103. Ms. Tavery could not defeat the Government's properly supported summary judgment cross motion because she presented no evidence, let alone significant probative evidence, contradicting Mr. Steffan's affidavit or tending to support her own motion for summary judgment. *See Conaway*, 853 F.2d at 792–93 (indicating that a party's sole reliance on verified complaint would be insufficient to satisfy the standards set forth by the Supreme Court in *Celotex*, 477 U.S. 317, 106 S.Ct. 2548, and *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, "especially when the allegations contained in the pleading are merely conclusory.").

The district court therefore was correct in granting summary judgment for the Government, but wrong in assuming as a matter of law that the information disclosed by the Government was "return information," thereby requiring application of the exceptions of § 6103(h)(4).

The majority takes an opposing view. It believes that "it would be unfair to affirm the summary judgment against Ms. Tavery," as I suggest, "on the different theory that she did not produce evidence that the IRS was the source of her return information." *Ante* at 1427 n. 5. The majority's stated reason for not affirming summary judgment in favor of the Government on this basis is that the Government did not raise this argument before the district court, and therefore "Ms. Tavery was not alerted by the government below that such evidence had to be shown in order for her to avoid summary judgment." *Ante* at 1427 n. 5.

Contrary to the majority's position, Ms. Tavery clearly *was* on notice that, in order to survive the Government's cross motion for summary judgment, she had to come forward with sufficient countervailing evidence that

the IRS was the source of the disclosed information. Ms. Tavery was provided with such notice by the Government's submissions to the district court both in opposition to her motion for summary judgment and in support of its own cross motion for summary judgment.

The Government argued before the district court that Ms. Tavery had not shown that the disclosed information was "[t]ax 'return information,' *i.e.*, that the source of the information was the IRS; as a result, she is not entitled to summary judgment." In its brief to the district court, the Government also noted that the affidavit of Mr. Steffan, "attached to the United States' Response *and Cross–Motion*, establishes that the information concerning Ms. Tavery did not flow through the IRS, but rather was obtained by Mr. Steffan in some other, independent, way." I.R. Doc. 9 at 6 (emphasis added). Not only was Ms. Tavery well aware of the Government's position that the disclosed information was not "return information" because it had not come from the IRS, her unsworn reply to the Government's cross motion for summary judgment focused on this precise point. Indeed, she identified as the "only issue for the Court to decide" the issue of whether Mr. Steffan could "escape from a charge of simple negligence by claiming he didn't get the information from the IRS when he clearly can state no other source for his information?" [3]

Once the Government properly supported its cross motion for summary judgment with the affidavit of Mr. Steffan, Ms. Tavery could "not rest upon mere allegations or denials, but [had to] set forth specific facts showing a genuine issue for trial, relying upon the types of evidentiary materials contemplated by Rule 56." *John Hancock Mut. Life Ins. Co. v. Weisman,* 27 F.3d 500, 503 (10th Cir. 1994) (citing Fed.R.Civ.P. 56(e)). Specifically, Ms. Tavery was required to satisfy the standards for affidavits set forth in Rule 56(e) in order to survive the Government's properly supported cross motion for summary judgment. *See Conaway,* 853 F.2d at 792 ("Rule 56(e) requires that the affidavit be based on personal knowledge, contain facts which would

be admissible at trial, and show that the affiant is competent to testify on the matters stated therein.").

Irrespective of the fact that a *pro se* litigant is held to less stringent standards than lawyers with respect to procedural infractions, *see Meade v. Grubbs,* 841 F.2d 1512, 1526 (10th Cir.1988), Ms. Tavery failed to offer any evidence whatsoever that the IRS was the source of the information, or to refute the unequivocal assertion of Mr. Steffan that he had not been given access by the IRS to Ms. Tavery's "return information." Under such circumstances, the district court should have entered summary judgment in favor of the Government on the basis that there was no evidence that the information disclosed was "return information" within the intendment of § 6103.

The cases cited by the majority for a contrary result are inapposite to its position. *See Ante* at 1427 n. 5. In contrast to the instant case, those cases—*Celotex,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Buckingham v. United States,* 998 F.2d 735 (9th Cir.1993), and *Malhotra v. Cotter & Co.,* 885 F.2d 1305 (7th Cir.1989)—did not involve cross motions for summary judgment.

In *Buckingham,* the Ninth Circuit reversed a district court which, after hearing the government's motion for summary judgment and without notice to the government, had *sua sponte* granted summary judgment for Buckingham, the non-moving party, despite the existence of genuine issues of material fact. 998 F.2d at 742. Unlike the situation in *Buckingham,* here Ms. Tavery had notice and actually responded to the Government's cross motion for summary judgment, but did so without furnishing any affirmative evidence that would have created a genuine issue of material fact precluding summary judgment for the Government. *Compare id.*

The majority's reliance on the Seventh Circuit case of *Malhotra* also is misplaced. If anything, *Malhotra* supports the proposition I have espoused here—that Ms. Tavery's failure to offer evidentiary materials to rebut Mr. Steffan's affidavit was fatal to her claim

---

**3.** *See supra* note 2.

that the Government had disclosed "return information." In *Malhotra*, the defendant employer in an employment discrimination case had urged summary judgment on procedural grounds, but had supported its summary judgment motion with a substantive affidavit that set forth facially nondiscriminatory reasons for its denial of two of numerous promotions sought by the plaintiff employee. Because the employee failed to offer any evidentiary materials to rebut the employer's affidavit, the Seventh Circuit held that summary judgment was properly granted in favor of the employer on the two failure-to-promote claims refuted in the affidavit. *Malhotra*, 885 F.2d at 1311.

The majority cites *Malhotra* for the proposition that " 'when a party moves for summary judgment on ground A, his opponent is not required to respond to ground B—a ground the movant might have presented but did not.' " *Ante* at 1427 n. 5 (citing *Malhotra*, 885 F.2d at 1310). That language was used by the *Malhotra* court in explaining why the employer in that case should not have been granted summary judgment on the employee's six remaining claims of discrimination in promotion, which the employer had failed to refute in its affidavit. Because the employer had not furnished an affidavit on these remaining six claims, the Seventh Circuit held that the employee was not required to produce evidence rebutting "a ground the movant might have presented but did not." *Id.* at 1310.

Finally, the majority quotes language from the Supreme Court case of *Celotex* to bolster its position that Ms. Tavery was not required to furnish evidence on the issue of whether the IRS was the source of the disclosed information because the Government had not explicitly made that argument in its cross motion for summary judgment. *See ante* at 1427 n. 5. The majority apparently reads in isolation the *Celotex* Court's observation that summary judgment *sua sponte* is appropriate " 'so long as the losing party was on notice that she *had to come forward* with all of her evidence.' " *Id.* (quoting *Celotex*, 477 U.S. at 326, 106 S.Ct. at 2554) (emphasis added by majority).

In *Celotex*, the Court was not dealing with the issue we face here. The issue in *Celotex* was whether a district court properly could grant summary judgment on the motion of a defendant when that motion was not supported by affirmative evidence negating the plaintiff's wrongful-death claims. The *Celotex* Court held that

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322, 106 S.Ct. at 2552. Because the parties in *Celotex* had already conducted discovery, the Court determined that the plaintiff could not seriously claim that she was not on notice that summary judgment could be entered against her. Noting that "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence," the Court reasoned that "[i]t would surely defy common sense to hold that the District Court could have entered summary judgment *sua sponte* in favor of [the defendant], but that [the defendant's] filing of a motion requesting such a disposition precluded the District Court from ordering it." *Id.* at 326, 106 S.Ct. at 2554.

In the instant case, the Government unquestionably was entitled to summary judgment on its cross motion. The majority and I are in full agreement on that point. Unlike the majority, however, I am convinced that the district court relied on the wrong grounds in entering summary judgment in favor of the Government. "In the review of judicial proceedings the rule is settled that if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937), *reh'g denied*, 302 U.S. 781, 58 S.Ct. 478, 82 L.Ed. 603 (1938); *accord Robert–Gay Enters., Inc. v. State Corp. Comm'n of Kansas*, 753 F.2d 857, 862 n. 5 (10th Cir.1985). Ac-

cordingly, I would affirm the district court's order granting summary judgment on the Government's cross motion, even though the district court relied on the wrong grounds.

I, therefore, respectfully concur in the result reached by the majority, but I do so without reaching any issue of disclosure as provided by 26 U.S.C. § 6103(h)(4).